# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN FERRIS, | ) |
| | ) |
| Plaintiff, | ) 2:15-cv-0947 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| BOROUGH OF BALDWIN, ET AL., | ) |
| | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

This case centers on a trash bag filled with $11 of municipally-purchased mulch, allegations of local government intrigue at its worst, and the interaction of each of those things with Plaintiff John Ferris' ("Ferris") service as a borough councilman.

Plaintiff alleges seven (7) claims in his 42 U.S.C. § 1983 action against Defendants Borough of Baldwin ("Baldwin"), Michael Scott ("Scott"), and Stanley Lederman ("Lederman"): violation of the First Amendment through malicious prosecution (Count I), violation of the Fourteenth Amendment's procedural due process protections (Count II), violation of the First and Fifth Amendments' "zones of privacy" (Count III), conspiracy (Count IV), violation of the First Amendment through retaliation (Count V), municipal liability (Count VI), and intentional infliction of emotional distress (Count VII). The operative Complaint in this case is Plaintiff's Second Amended Complaint, ECF No. 38. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 20, and Defendants' Supplemental Motion to Dismiss, ECF No. 39, which the Court and parties have elected to treat collectively as a Motion

to Dismiss Plaintiff's Second Amended Complaint ("SAC"). ECF No. 37. For the reasons that follow, Defendants' Motions are granted as to all Defendants and all Counts.[1]

## I. BACKGROUND

The facts alleged in Plaintiff's SAC, which the Court will accept as true for the purposes of deciding the pending Motions, state that Ferris is a resident of Pennsylvania and that Baldwin Borough is a municipal corporation located in Pennsylvania. ECF No. 38 at ¶¶ 4-5. At all relevant times, Scott and Lederman were Baldwin's Chief of Police and Solicitor, respectively. *Id.* at ¶¶ 6-7. From 1995 through 2015, Ferris was one of Baldwin's councilmen and was also the Chairman of Baldwin Council's Public Works Committee. *Id.* at ¶ 9. In August 2012, Ferris began voluntarily beautifying Colewood Park, a public park in Baldwin. *Id.* at 12. He did not ask Baldwin for extra compensation for the task. *Id.* at 14. In November 2012, Ferris "openly criticized" Baldwin's Council for firing its Public Works Foreman. *Id.* at ¶ 10. In April 2013, a team of workers supervised by Mark Stevenson, Baldwin's Director of Public Works, placed excess mulch outside of Colewood Park. *Id.* at ¶ 13; ECF No. 21 at 3. Ferris asked Stevenson if he could take some of the mulch to use at his home, and Stevenson authorized him to do so. ECF No. 38 at ¶¶ 14-15. Ferris then placed eleven ($11) dollars' worth of mulch in a garbage bag and spread it on his front yard. *Id.* at ¶ 15.

A few weeks later, on May 15, 2013, Baldwin's Council President was informed that Ferris had stolen mulch from Baldwin, so he filed a complaint against Ferris with the Allegheny

---

[1] Ferris submitted an Affidavit along with his Brief in Opposition to Defendants' Supplemental Motion to Dismiss. ECF No. 43-1.Under Federal Rule of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court declines to convert the pending Motions into a Motion for Summary Judgment and thus will not consider Ferris' Affidavit. *See e.g., Burke v. Glanton*, No. 12-CV-851, 2012 WL 5468932, at *2 (W.D. Pa. Nov. 9, 2012). The Court notes that even if it were to consider the Affidavit and treat it as part of the SAC, its conclusions about the claims in Ferris' SAC would not change, nor would it impact how the law is applied in this case. *See* ECF No. 43-1.

2

County District Attorney's Office. *Id.* at ¶ 16. Ferris was interviewed by a Baldwin police officer regarding the mulch, and Ferris explained that Stevenson had given him permission to take it. *Id.* at ¶ 17. However, when speaking to the same police officer, Stevenson denied giving Ferris permission to take the mulch and stated that what he told Ferris was "[y]ou're on Council, do what you want." *Id.* at ¶ 18.

In August 2013, Lederman and Scott informed Ferris that they would not press charges against him for theft of the mulch if Ferris publicly apologized for taking the mulch. *Id.* at ¶ 19. On August 22, 2013, at the Baldwin Council meeting, Ferris orally apologized for taking the mulch. He also apologized in writing, and his apologies were covered by the local media. *Id.* at ¶ 21. Despite the fact that he apologized to the Baldwin community, Ferris was later charged with one count of theft by unlawful taking and one count of receiving stolen property. *Id.* at ¶ 23. He pled guilty to disorderly conduct on October 30, 2013, *id.* at ¶ 24, and filed this civil suit on July 21, 2015. *See* ECF No. 1.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court may grant a motion to dismiss when a plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Accordingly, the Court may not dismiss a complaint that contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal

3

citations omitted). To evaluate a motion to dismiss, the Court must accept as true all of the facts delineated in a plaintiffs' complaint. *Id.*

## III. DISCUSSION

There are seven (7) Counts in this case, and the Court will address each of them separately, in the order that in the Court's estimation is the most logical.

### A. Count V: Retaliation

In Count V of the SAC, Ferris alleges that Scott and Lederman tricked him into falsely confessing to stealing the mulch in order to prosecute him in retaliation for him exercising his First Amendment rights when he criticized Baldwin's Council for firing the Borough's Public Works Foreman. ECF No. 38 at ¶ 69-77.[2] Scott and Lederman, on the other hand, assert that they are entitled to qualified immunity for Ferris' retaliation claim. In order to determine if Scott and Lederman are entitled to qualified immunity for their actions, the Court will consider two questions: "[f]irst, whether the facts alleged by the plaintiff show the violation of a constitutional

---

[2] Ferris also includes Baldwin as a Defendant in his retaliation claim, claiming that "Baldwin, through its agent, Defendant Scott, directly participated in the illegal conduct by allowing charges to be filed against Plaintiff through a coerced admission in retaliation for Plaintiff exercising his First Amendment rights." ECF No. 38 at ¶ 73. There are multiple reasons why Ferris' claim against Baldwin must be dismissed.

First, Ferris' claims against Baldwin amount to nothing more than dressed-up *respondeat superior* claims. It is well-established that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691(1978).

Second, a municipality generally cannot be held liable for conduct for which its employee cannot be held liable. Here, the Court concludes that Ferris has no claim against Scott (or Lederman) for retaliation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that if a municipal employee cannot be held liable, "it is inconceivable [the municipality] could be liable"). The Court acknowledges that the Third Circuit has recognized a very limited exception to this principle for cases in which a municipal employee is "following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights." *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994). However, the typical situation in which this would occur is where a municipal employee follows a governmental policy enacted by an "up stream" policymaker, and although the individual is not liable, the unit of government nonetheless is for creating and enforcing a policy that "could be found to have 'caused' the alleged constitutional deprivation." *Estate of Thomas v. Fayette Cty.*, 194 F. Supp. 3d 358, 380 (W.D. Pa. 2016). Ferris does not allege that such is the case here—he does not allude to any Borough policy in his retaliation claim, other than the alleged retaliation itself. Accordingly, because Ferris' claim against Scott and Lederman must be dismissed, his claim against Baldwin must be dismissed as well.

4

right, and second, whether the right at issue was clearly established at the time of the alleged misconduct." *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 176 (3d Cir.), *cert. denied sub nom. Werkheiser v. Pocono Twp., Penn.*, 136 S. Ct. 404, 193 L. Ed. 2d 315 (2015).

The Court first concludes that Ferris has not alleged facts that show the violation of a clearly established constitutional right. As the Third Circuit has explained:

> To establish a First Amendment retaliation claim predicated on 42 U.S.C. § 1983, a plaintiff must prove the following elements: (1) constitutionally protected conduct; (2) that the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal connection between the two. There is also a fourth element required to state a First Amendment retaliation claim premised on an investigation that leads to a decision to prosecute: the absence of probable cause for the prosecution.

*Walker v. Clearfield Cty. Dist. Attorney*, 413 F. App'x 481, 483 (3d Cir. 2011) (internal citations omitted). In this case, there are numerous problems with Ferris' retaliation claim.

To begin, even if the Court assumes that Ferris' criticism of Baldwin's Council's treatment of the Public Works Foreman in November 2012 was constitutionally protected conduct and that Scott, Lederman, and Baldwin "took adverse action sufficient to deter a person of ordinary firmness from exercising his rights," Ferris has failed to sufficiently plead "a causal connection" between Ferris' criticism in 2012 and the Defendants' actions in the Fall of 2013. First, the period of time between Ferris' criticism and Scott and Lederman's statements and actions (close to a year) is not probative of causation as a matter of law. "[F]or temporal proximity to be probative of causation, the timing of the retaliatory action must be 'unusually suggestive' of retaliatory motive." *Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 808 (3d Cir. 2015). "Although two weeks *may* be close enough temporally to be probative of causation," six months elapsed between Ferris' criticism (in November 2012) and Scott and Lederman's first conversation with Ferris (in August 2013). Such a lapse of time is plainly not "unusually suggestive" enough to be probative of causation. *Id.* (emphasis added). *See also LeBoon v.*

*Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"); *Bailey v. Commerce Nat. Ins. Servs., Inc.*, 267 F. App'x 167, 170 (3d Cir. 2008) (concluding that a period of four months was too long to be unusually suggestive of a retaliatory motive).

Additionally, Ferris has not alleged that Scott and Lederman were even aware of Ferris' criticism. The Third Circuit has "generally required that defendants in First Amendment retaliation actions be aware of the protected conduct in order to establish the requisite causal connection." *Hammond*, 628 F. App'x at 807. In this case, Ferris does not allege that Scott and Lederman had personal knowledge of his opinion about the Public Works Foreman. All he asserts is that he "openly criticized" Baldwin's Council. ECF No. 38 at ¶ 10. This allegation is not enough to support Ferris' claim that his First Amendment rights were violated by causally related retaliatory conduct by Scott and Lederman. Thus, the Court concludes that Ferris has failed to allege a violation of his First Amendment rights and that therefore Scott and Lederman are entitled to qualified immunity on that claim.

The Court also concludes that Scott and Lederman are entitled to qualified immunity under the second prong of the qualified immunity analysis—"whether the right at issue was clearly established at the time of the alleged misconduct." *Werkheiser*, 780 F.3d at 176. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal quotations and alterations omitted). In this case, in 2012 and 2013 when Ferris' criticized Baldwin's council and

was then prosecuted, it was not clearly established that Ferris' statements were protected by the First Amendment or that the actions alleged violated the First Amendment.

In *Werkheiser*, an elected member of a township's Board of Supervisors, who had also been appointed to be the Roadmaster (Director of Public Works) of the township, voiced his concern about some of the Board's compensation and hiring decisions. The plaintiff made his statements in 2012, and his reappointment as Roadmaster was denied in January 2013. *Id.* at 175. He sued over that action. To determine whether the defendants (other elected officials) were entitled to qualified immunity, the Third Circuit considered existing Supreme Court precedent and ultimately concluded that "[the plaintiff's] First Amendment rights, as an elected official, were not sufficiently defined as to warrant denying [the defendants] qualified immunity." *Id.* at 177. Specifically, the Third Circuit examined *Garcetti v. Ceballos*, 547 U.S. 410 (2006), in which the Supreme Court held that the First Amendment does not protect public employees' speech made pursuant to their official duties. 547 U.S. at 421. The Third Circuit, however, did not hold that *Garcetti* was dispositive. Instead, the Third Circuit explained, "[w]e pause here to emphasize that we do not today decide whether *Garcetti* is applicable to elected officials' speech or not. Rather, we conclude *only* that the law was not clearly established on this point." *Werkheiser*, 780 F.3d at 177 (emphasis in original). Thus, the Third Circuit concluded that the defendants in *Werkheiser* were entitled to qualified immunity because no "clearly established" right would have been violated by the alleged retaliation.

Applying *Werkheiser*, decided nearly two years after the events at issue here, the Court concludes that it stands for the proposition that it was not clearly established that Ferris, an elected Baldwin councilman voicing his opinion on a matter decided by Baldwin's Council, was entitled to First Amendment protection from the retaliation alleged here for his critical

7

statements.[3] Further, based on this Court's consideration of *Werkheiser*, it was also not clearly established at that time that retaliation against an elected official by political opponents that diminished that official's effectiveness as an elected official was a First Amendment violation. *See id.* at 181-83. Accordingly, the Court concludes that Scott and Lederman are entitled to qualified immunity, and Count V of Ferris' SAC is dismissed with prejudice as to all Defendants. *See Willson v. Yerke*, 604 F. App'x 149, 152 (3d Cir. 2015) (applying *Werkheiser* to discuss qualified immunity and explaining that "the law [regarding 'elected officials' speech'] was not clearly established").

Alternatively, even if Scott and Lederman were not entitled to qualified immunity, Ferris' retaliation claim would still be dismissed because it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The fourth element that Ferris must allege for his retaliation claim is "the absence of probable cause for the prosecution." *Walker*, 413 F. App'x at 483. The Third Circuit has stated that in general, "a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause." *Walker*, 413 F. App'x at 483. In fact, the Supreme Court has observed that "the presumption of probable cause arising from a conviction can be rebutted only by showing that the conviction had been obtained by some type of fraud." *Heck*, 512 U.S. at 486, n. 4. In this case, Ferris asserts that such probable cause cannot be presumed because his confession and subsequent conviction were obtained fraudulently, *e.g.* due to alleged double-dealing by Scott and Lederman. ECF No. 28 at 5-6, 12-13. The Court notes that in most cases where plaintiffs argue that their convictions have been obtained by fraud, they are alleging that false information

---

[3] The Court notes that Ferris does not specify in his SAC if his statements occurred at a Baldwin Council meeting—all he alleges is that he "openly criticized" Baldwin's Council. ECF No. 38 at ¶ 10. The Court's conclusion, however, would not change were Ferris to specify where or when he made his statements. In any case, Ferris was an elected official speaking about a decision he presumably voted on, and therefore, based on *Werkheiser*, his First Amendment rights were not clearly established.

8

was presented to neutral, third parties, such as juries, grand juries and magistrate judges. *See, e.g., Kearney v. Hibner*, No. 1:13-CV-1892, 2014 WL 1234527, at *11 (M.D. Pa. Mar. 25, 2014) (plaintiffs alleged that defendants were "lying during the course of the criminal proceedings, committing perjury, and withholding exculpatory evidence"); *Platts v. Buchanan*, No. CIV.A. 12-1788, 2013 WL 4810486, at *6 (W.D. Pa. Sept. 9, 2013) ("Plaintiff essentially alleges that his indictment before the grand jury was obtained by fraud, because the evidence presented to the grand jury, which was also provided at trial, was perjurious"); *Bucano v. Pennsylvania*, No. 3:CV-12-1816, 2012 WL 6917785, at *5 (M.D. Pa. Dec. 27, 2012), *report and recommendation adopted*, No. 3:12-CV-1816, 2013 WL 247003 (M.D. Pa. Jan. 22, 2013) (plaintiffs alleged "fraud and false testimony" were presented during their trials); *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 652 (W.D. Pa. 2010) (plaintiffs alleged that a warrant contained false information).

Such is not the case here, since the only "fraud" alleged by Ferris is that Scott and Lederman went back on their promise to not press charges, which is not the equivalent of obtaining a conviction via false testimony or phony evidence. But, in any event, Ferris' claim fails because it is also barred by the main principle delineated in *Heck*.

In *Heck*, the Supreme Court held that a plaintiff cannot recover damages under § 1983 when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. In this case, Ferris has not alleged that his conviction for disorderly conduct has been invalidated or set aside in any way. Specifically, he does not contend that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

9

make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* Instead, what Ferris does allege is that that Scott and Lederman convinced him to confess to a crime he did not commit in exchange for the promise that they would not press charges against him, and then later did just that. Because Ferris pled guilty to a crime based on the conduct he confessed to, "[i]f [his] allegation were proven, it would plainly imply the invalidity of [his] conviction, and thus [Ferris' retaliation claim] runs afoul of *Heck.*" *Walker,* 413 F. App'x at 484. *See Rosembert v. Borough of Lansdowne,* 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) ("A finding that the charges brought against Plaintiff were based upon fraud would necessarily call the propriety of his guilty plea and conviction into question, and is therefore *Heck*-barred."); *Kearney,* 2014 WL 1234527, at *11 ("Because success in establishing that Defendants falsely convicted Plaintiffs, by allegedly lying during the course of the criminal proceedings, committing perjury, and withholding exculpatory evidence, would necessarily render Plaintiffs' convictions or sentences invalid, *Hecks'* s reasoning renders Plaintiffs' claims non-cognizable absent an invalidation of those convictions."). Therefore, Ferris' retaliation claim must be dismissed based not only on qualified immunity grounds, but also because it is barred by at least two distinct principles set forth in *Heck.*

### B. Count I: Malicious Prosecution

In the first Count of his SAC, Ferris alleges a violation of his First Amendment rights against Baldwin, Scott, and Lederman.[4] Ferris asserts that Scott and Lederman maliciously prosecuted him because they knew or should have known that there was no reasonable basis for

---

[4] Ferris claims that Baldwin is liable for his alleged malicious prosecution because Scott is a high-ranking policy maker of Baldwin, so his actions alone created an official Borough policy. *See Monell v. Dep't of Soc. Servs. Of City of N.Y.,* 436 U.S. 658 (1978). But, as noted in note 2 above, because the Court concludes that Ferris has no claim against Scott (or Lederman) for malicious prosecution, Ferris' claim against Baldwin must be dismissed as well. *See supra* note 2.

10

the charges brought against him and because their actions constituted malice. ECF No. 38 at ¶¶ 35-36.

Although Ferris' malicious prosecution claim is asserted as being based on the First Amendment, rather than the more traditional Fourth Amendment route, in *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000), the Third Circuit reiterated that a claim for malicious prosecution in a § 1983 action can "be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it [is] not based on substantive due process." 211 F.3d at 792. In *Olasz v. Welsh*, 301 F. App'x 142 (3d Cir. 2008), the Third Circuit explained that for a malicious prosecution claim based on First Amendment retaliation, "the appropriate analysis must still begin with a review of whether a First Amendment violation can be established." 301 F. App'x at 145. The Third Circuit then went on to conclude that the plaintiff's malicious prosecution claim could not survive because he "fail[ed] to demonstrate that he engaged in protected speech and his rights under the First Amendment were violated." *Id.* at 146. The same is true here. As discussed above, Ferris cannot sustain his First Amendment retaliation claim in part because there is no constitutional violation adequately alleged in this case. Accordingly, he cannot sustain a "First Amendment" malicious prosecution claim either.

Additionally, in any event the Court concludes that Scott and Lederman are entitled to qualified immunity as to Ferris' malicious prosecution claim. As the Defendants correctly observe, ECF No. 33 at 5, Ferris' malicious prosecution claim is essentially the same as his retaliation claim—in both claims, Ferris asserts that he was prosecuted in retaliation for exercising his First Amendment right to free speech. Therefore, for the same reasons explained above, Scott and Lederman are also entitled qualified immunity for Ferris' malicious prosecution

11

claim. *See Howell v. Young*, 530 F. App'x 98, 100 (3d Cir. 2013) ("Although immunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded, the District Court did not err in raising it sua sponte because the defect was clear from the face of [plaintiff's] complaint") (internal citations and quotations omitted). Count I of Ferris' SAC is therefore dismissed with prejudice as to all Defendants.

### C.     Count II: Procedural Due Process

In Count II, Ferris alleges that his procedural due process rights were violated by Scott, Lederman and Baldwin.[5] He alleges that Scott and Lederman's actions harmed his reputation and were taken in retaliation for his criticism of Baldwin's Council. ECF No. 38 at ¶¶ 43-46. As the Third Circuit has explained, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (internal citations omitted). In this case, Ferris argues that the "*plus*" factor is the violation of his First Amendment rights through Scott and Lederman's alleged retaliation. As discussed above, Ferris First Amendment retaliation claim fails on multiple grounds, and thus, his procedural due process claim must fail as well. He cannot sustain a procedural due process claim solely on the basis of harm to his reputation because "reputation *alone* is not an interest protected by the Due Process Clause." *Id.* at 236 (emphasis in original).

Additionally, Ferris' claim fails because it is *Heck*-barred. Ferris claims that the stigma to his reputation arose when he was fraudulently coerced into confessing to stealing the mulch. "To

---

[5] In Count II, Ferris contends that Baldwin "through its agent, Defendant Scott, subsequently directly participated in the illegal conduct of fraudulently coercing a confession from the Plaintiff and by allowing charges to be filed against Plaintiff." ECF No. 38 at ¶ 48. The claim against Baldwin will be dismissed because Ferris cannot sustain a claim against Scott and Lederman and because, once again, it is nothing more than a dressed-up *respondeat superior* claim. *See supra* note 2.

12

satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Id.* In this case, the Court is presented with an unconventional set of facts: Ferris is claiming that the stigmatizing statement—his apology as to his mulch-related culpability—was made by *him*, not by any of the Defendants. Ferris alleges that he made his statement publicly, but he also alleges that what *he* said was false. Setting aside any incongruity with the fact that Ferris himself was the one who publicized the purportedly stigmatizing statement, the Court concludes that his proving that his own apology was false would necessarily imply the invalidity of his conviction which follows from it and which is based on his guilty plea to a lesser charge involving his taking the mulch without permission. Accordingly, Ferris' procedural due process claim is also barred by *Heck* and must be dismissed without prejudice. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (explaining that *Heck*-barred claims must be dismissed without prejudice).

### D. Count III: Self-Incrimination

In Count III, Ferris asserts that the First and Fifth Amendments create "zones of privacy" that Defendants violated by forcing him to confess publicly, thereby incriminating himself.[6] ECF No. 38 at ¶¶ 54-56. The Court need not undertake a lengthy discussion of the Constitution's penumbras, *see generally Griswold v. Connecticut*, 381 U.S. 479 (1965), because even if Ferris' historical legal analysis is correct, he cannot sustain a private civil claim for violation of his right not to incriminate himself. In a fractured opinion, four Justices of the Supreme Court agreed that "mere coercion does not violate the text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case against the witness." *Chavez v. Martinez*, 538 U.S. 760,

---

[6] Ferris again asserts that Baldwin is liable because Baldwin "ratified the conduct of Defendants Lederman and Scott by allowing charges to be filed against Plaintff." ECF No. 38 at ¶ 57. Once again, Ferris' claim against Baldwin must be dismissed because *respondeat superior* claims cannot be asserted under ¶ 1983 and because the claims against Scott and Lederman are dismissed. *See supra* note 2.

13

769 (2003) (Thomas, J.). The Third Circuit has since clarified that "it is the use of coerced statements *during a criminal trial, and not in obtaining an indictment*, that violates the Constitution." *Renda v. King*, 347 F.3d 550, 559 (3d Cir. 2003) (emphasis added). In this case, Ferris' allegedly coerced statement was never used against him *during a criminal trial*—he did not have a criminal trial because he pled guilty. Thus, although "a promise by a law enforcement officer may qualify as coercion," whether or not Ferris was coerced into confessing by Scott and Lederman's promise not to press charges against him is irrelevant to resolution of this claim. *United States v. Jacobs*, 431 F.3d 99, 109 (3d Cir. 2005) (citations omitted). Ferris cannot sustain his claim because his confession was never used against him at trial, and Count III is therefore dismissed with prejudice.

E.   **Count IV: Conspiracy**

In Count IV of his SAC, Ferris alleges that Scott and Lederman conspired to violate his constitutional rights as discussed above. ECF No. 38 at ¶¶ 63-65. "The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant." *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999). In this case, for the reasons previously stated, there is no conduct that is actionable against Scott and Lederman as individual defendants, so Ferris' conspiracy claim cannot be sustained. In short, Count IV "fail[s] because there is no underlying violation of [Ferris'] constitutional rights, which is a prerequisite for conspiracy liability." *Hamborsky v. O'Barto*, 613 F. App'x 178, 182 (3d Cir. 2015). Count IV is dismissed with prejudice as to both Scott and Lederman.

### F. Count VI: Municipal Liability

Count VI of Ferris' SAC alleges that Baldwin failed to properly train and supervise its police officers and that such failure led to violations of his constitutional rights. ECF No. 38 at ¶¶ 79-87. "The Supreme Court has recognized that 'under certain circumstances' a municipality may be liable under § 1983 for a failure to adequately train its police officers [...] It is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable [...] However, for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights." *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (internal citations omitted); *see also Estate of Thomas v. Fayette Cty.*, 194 F. Supp. 3d 358, 2016 WL 3639887, at *14-15 (W.D. Pa. 2016). Here, the Court has concluded that it must dismiss all of Ferris' constitutional claims (Counts I, V, II, and III), so Ferris cannot prove a violation of his constitutional rights. Accordingly, Count VI, Ferris' municipal liability claim against Baldwin, is also dismissed with prejudice.

### G. Count VII: Intentional Infliction of Emotional Distress

In his final claim, Ferris asserts that Scott and Lederman's actions were intended to inflict emotional distress and were extreme and outrageous. ECF No. 38 at ¶¶ 91-97. As this Court has previously explained:

> To state a plausible claim for intentional infliction of emotional distress, a plaintiff must allege sufficient facts demonstrating that (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and that (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur. Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. In addition, a plaintiff must allege that he or she suffered some type

of resulting physical harm due to the defendant's outrageous conduct, which must
be supported by competent medical evidence.

*Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir.2001); *Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir.2010)) (internal quotations, alterations and citations omitted).

In this case, the Court need not decide whether Scott and Lederman's alleged conduct could ever qualify as "extreme and outrageous" for these purposes (although the Court has serious doubts about that). The Court does conclude that Ferris' intentional infliction of emotional distress claim must be dismissed because Ferris has not sufficiently alleged that he suffered physical harm. Ferris claims that he was "subjected to physical pain and suffering" that includes "injuries and incurred damages which may become apparent throughout this litigation." ECF NO. 38 at ¶ 96. These gauzy, vague words are not enough. Ferris does not allege any specific physical problems he suffered, nor does he include, or even allude to, any "competent medical evidence" of such. Thus, Count VII fails as a matter of law and is dismissed with prejudice.

## IV. <u>CONCLUSION</u>

Defendants' Motion to Dismiss and Supplemental Motion to Dismiss are granted as to all Counts and all Defendants. Count II is dismissed without prejudice because claims that are barred by *Heck* must be dismissed without prejudice. *Curry*, 835 F.3d at 379. Counts I, III, IV, V, VI and VII are dismissed with prejudice.

Ferris is also denied leave to amend his SAC as to the Counts dismissed with prejudice. "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied," and in this case, Ferris has already amended his Complaint twice, all to no avail. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

16

He has already had three bites of the apple, and given the detail of his allegations (and his Affidavit), it is plain that after three tries, he has pled what he can, which, as noted, is not enough. Accordingly, Ferris will not be given another opportunity to amend his SAC.

An appropriate Order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: March 23, 2017

cc: All counsel of record